FILED
2016 Jul-19  PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| ALLSTATE INDEMNITY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO.: 1:15-CV-96-VEH |
| FREDRICK B. BERREY, JR., et al, | ) ) | |
| Defendants. | ) | |

---

## MEMORANDUM OPINION AND ORDER

This declaratory judgment action was filed on January 20, 2015, by the Plaintiff, Allstate Indemnity Company ("Allstate") against Frederick B. Berrey, Jr. The complaint also named as Defendants Whispering Pines of Lay Lake, Inc. and Whispering Pines of Lay Lake Homeowner's Association (collectively "the Whispering Pines Defendants"); and Louis Vanscoy, as personal representative of the estate of Robert John Sajnacki. (Doc. 1). Allstate seeks a declaration that it is not required to defend or indemnify Berrey in connection with a currently pending wrongful death lawsuit, which has been filed by Vanscoy, on behalf of Sajnacki's estate, in the Circuit Court of Talladega County, Alabama ("the underlying action"). That suit is styled *Louis Vanscoy, as Personal Representative of the Estate of Robert John Sajnacki v. Frederick B. Berrey, Jr.; Whispering Pines of Lay Lake, Inc.;*

*Whispering Pines of Lay Lake Homeowner's Assoc., et al.* CV-2014-900309. (Doc. 1 at 3).

The case comes before the Court on the Cross Motions for Summary Judgment filed by Allstate (doc. 66) and Berry (doc. 69), and the Motion to Dismiss filed by Berrey (doc. 64). The two summary judgment motions each essentially argue the same issue. Allstate's Motion for Summary Judgment asks the Court to hold and declare that, as a matter of law, "Allstate has no duty to defend . . . Berrey in the underlying suit under the two Allstate homeowner policies and the umbrella policy issued to . . . Berrey." (Doc. 66 at 2). Berrey's Motion for Summary Judgment asks the Court to hold that, as a matter of law, "Allstate's request for a declaration that it has no duty to defend Berrey with regard to the claims brought by Vanscoy in Talladega County is due to be summarily denied." (Doc. 69 at 2). Part of Berrey's Motion for Summary Judgment references and includes arguments contained in Berrey's Motion to Dismiss. That motion argues that this action should be dismissed because it is moot, or because the Complaint in the underlying action is no longer the "operative pleading." (Doc. 64 at 3, 4-5).[1] For the reasons stated herein Allstate's Motion for Summary Judgment will be **GRANTED**, and Berrey's Motion for

---

[1] This Court has already held that the duty-to-indemnify issue is not yet ripe because there has been no liability determination in the underlying action. (Doc. 56 at 5).

Summary Judgment and Motion to Dismiss will be **DENIED**.

## I.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All

reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can

4

satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *S. Pilot Ins. Co. v. CECS, Inc.*, No. 1:11 CV 3863 AT, 2014 WL 4977805, at *2 (N.D. Ga. Sept. 12, 2014) (citing

*Am. Bankers Ins. Group v. United States,* 408 F.3d 1328, 1331 (11th Cir.2005)). "The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Id.* "The Eleventh Circuit has explained that '[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.'" *Id. (quoting United States v. Oakley,* 744 F.2d 1553, 1555 (11th Cir.1984)). "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* (quoting *Oakley*, 744 F2d at 1555–56).

## II.   FACTS[2]

### A.   <u>The Underlying Action</u>

On July 22, 2014, Louis Vanscoy, as personal representative of Sajnacki's

---

[2]   Setting out one set of "facts" when considering cross motions for summary judgment can be daunting since, in considering each motion, the Court must resolve all reasonable inferences against the movant.  However, in the instant case, because most facts center around the wording of complaints in the underlying action and the policies in question, there were very few disputed facts. To the extent that there were disputes, the parties typically alleged that the section cited was taken out of context, was improperly paraphrased, did not tell the whole story, etc.  In such cases, the court resolved the dispute by quoting all of the portions cited by the parties.  Further, the only other disputes centered around Berrey's deposition testimony.  Again, the parties typically each cite to sections of that testimony which they feel benefit their argument.  As it did with the other objections, the Court merely references all such testimony cited.  Ultimately, there are no real disputes about what the documents say, or to what Berrey testified.  Everything which the parties felt was important has been included and considered. In its analysis of each issue, to the extent there is a genuine dispute as to any <u>material</u> fact, summary judgment will not be granted to any party.

estate, sued Berrey and the Whispering Pines Defendants in the Circuit Court of Calhoun County, Alabama. (Doc. 20-1). The original Complaint, in pertinent part alleged that:

– Berrey "owns property in and does business in Talladega County" (doc. 20-1 at 3, ¶2);

– the Whispering Pines Defendants are corporations doing business in Talladega County (doc. 20-1 at 3, ¶¶3, 4);

– Berrey, and the Whispering Pines Defendants, "planned, designed, developed[,] and constructed the Whispering Pines subdivision . . . including the roads and storm water drainage system" (doc. 20–1, ¶10);

– Berrey "was at all times material to this action the owner of property located at 100 Tinnie Lane, Childersburg, Alabama, within the Whispering Pines subdivision" (doc. 20-1 at 4, ¶12);[3]

– on the day of the accident "and sometime prior thereto, storm water from Berrey's property was channeled to three drain drainage pipes that run underneath Tinnie Lane and to the back side of the Sanjacki residence property and ultimately draining into Lay Lake" (doc. 20–1, ¶ 14);

– "all of the Defendants … knew or had reason to know that following certain

_____

[3] Throughout the original Complaint, 100 Tinnie Lane is referred to as "Berrey's property."

7

rain storms water would flood over Tinnie Lane and would back up and cover the drains that were designed to take water under the road" (doc. 20-1, ¶16);

– "One of the drain pipes, which was not substantially clogged as the others were, cleared water from Defendant Berrey's property by powerfully suctioning it under Tinnie Lane to Lay Lake. This drain pipe had no grate or protective cover over it" (doc. 20-1, ¶17);

– on the day of the accident, "Tinnie Lane flooded and water covered the drain pipes as previously described herein. This resulted in a pool of water above the uncovered drain pipe that was actually suctioning water below the surface …." (doc. 20-1, ¶ 20);

– the decedent was sucked into the drain pipe and died from the injuries he sustained (doc. 20-1 at 5-6, ¶¶21-30); and

– Berrey and the Whispering Pines Defendants were "negligent, reckless[,] or wanton" in:

a)    Planning, designing, constructing or maintaining Tinnie Lane;

b)    Planning, designing, constructing or maintaining the storm water drainage and/or flood control measures on Tinnie Lane;

c)    failing to adequately respond to prior notice of flooding along Tinnie Lane;

d)    failing to warn of the dangerous condition of the drain pipe's

powerful suctioning that could not be seen when water covered the pipe;

e)      failing to place a protective coverage outside the drain pipe to prevent a person from being sucked inside the pipe; and/or;

f)      otherwise acting or failing to act reasonably by allowing a dangerous, hidden condition to exist as described herein. (Doc. 20-1, ¶32).

The original Complaint does <u>not</u> specifically allege:

– that "Berrey was negligent, reckless or wanton in connection with professional and business activities;"

– that "Berrey was negligent, reckless or wanton in connection with property owned by Berrey at 100 Tinnie Lane;"

– who owns the storm drain intakes; or

– that Berrey rented 100 Tinnie Lane to an unrelated third party.

An Amended Complaint was filed in the underlying action on December 28, 2015. (Doc. 59 at 7). The Amended Complaint, in pertinent part, contains the same allegations as the original Complaint except for the following changes:

| Allegation in Original Complaint | Changed Allegation in Amended Complaint |
|---|---|
| – Berrey "was at all times material to this action the owner of property located at 100 Tinnie Lane, Childersburg, Alabama, within the Whispering Pines subdivision" (doc. 20-1 at 4, ¶12); | – Berrey "was at all times material to this action the owner of **the road known as Tinnie Lane** within the Whispering Pines subdivision." (Doc. 59 at 9, ¶12) (emphasis added). |
| – on the day of the accident "and sometime prior thereto, storm water from Berrey's property was channeled to three drain drainage pipes that run underneath Tinnie Lane and to the back side of the Sanjacki residence property and ultimately draining into Lay Lake." (Doc. 20–1, ¶ 14). | – on the day of the accident "and sometime prior thereto, storm water from **surrounding property** was channeled to a system of drainage pipes that run underneath Tinnie Lane. **One of these pipes has an outlet on** the back side of the Sajnacki residence property and ultimately **drains** into Lay Lake." (doc. 59 at 9, ¶ 14) (emphasis added). |

Also, the Amended Complaint does <u>not</u>:

– make specific reference to "property located at 100 Tinnie Lane;"

– discuss the reason that Berrey allegedly owns Tinnie Lane;

– make any allegation that any business is conducted on (or under) Tinnie Lane; or

– make any allegation with regard to any installment sales contract, or allege that Berrey rented out 100 Tinnie Lane.

**B.**     **Fredrick Berrey**

Fredrick Berrey graduated with a degree in Finance from the University of

Alabama in 1977. Since then, he has owned and/or operated several businesses, including developing an electronic device, an indoor firing range, and a go-cart track.

In the late 1990s or early 2000s Berrey became involved in real estate sales and listed his occupation as "real estate sales" on his tax returns. At about this time, Berrey began selling real property under real estate installment sales contracts. Berrey testified that in such contracts the buyer paid him a certain amount of money each month towards the price of land. (Doc. 68-1 at 4(12)). When the debt was paid off, Berrey would provide the purchasers with a deed to the property. (Doc. 68-1 at 4(12)-5(13)). Berrey has done about 300 such installment sales contracts over the past 15 years. Currently, he has about 100 investment properties where he has an installment sales contract on the properties. Berrey receives interest income from these installment sales, and has had to evict some purchasers for defaulting on installment sales contracts.[4]

## C.   Berrey's Talladega County Land Purchase

In 2001, Berrey bought 470 contiguous acres in Talladega County in a sale-for-division from a trust. Berrey paid $650,000 for the property to the Clerk of Talladega County. It is undisputed that the purpose of buying the 470 acres was for

---

[4]  He testified that he has also done some rentals of property that are not installment sales contracts.

investment. Berrey hoped the property would be of economic gain to him, testifying in his deposition that "we would buy it at one price and sell it at a higher price." (Doc. 68-1 at 6(20)). Within the 470 acres was the 250 acre Whispering Pines of Lay Lake Subdivision ("the Whispering Pines Subdivision").

In 2002, Berrey incorporated Whispering Pines of Lay Lake, Inc. That corporation's Articles of Incorporation list the purpose of the corporation as: "To engage primarily in the business of developing real estate." (Doc. 68-1 at 49). The Articles of Incorporation list Berrey as is the director, president, vice-president, and secretary of the corporation. (Doc. 68-1 at 48, 49). Berrey testified he owns 98% of the stock of the company and his wife owns 2%. Whispering Pines of Lay Lake, Inc.'s address is Berrey's house in Verbena, Alabama.

Berrey deeded some of the Whispering Pines Subdivision to Whispering Pines of Lay Lake, Inc., so that "some of it [the corporation] owns and some of it I'll own." (Doc. 68-1 at 14(49)). He personally, and the corporation, collectively have sold 150 to 160 lots from the Whispering Pines Subdivision.[5]

### D.   The Accident Site—the Tinnie Lane Area

It is undisputed that the site of Sajnacki's injury is within Berrey's 470 acre

---

[5] Berrey does not know how to break down property sales of what he personally sold versus what Whispering Pines of Lay Lake, Inc. sold.  Berrey and Whispering Pines of Lay Lake, Inc. each also own property outside the Whispering Pines Subdivision.

purchase, but not within the Whispering Pines Subdivision. Berrey paid $75,000 to $100,000 to survey the roads and lots in the 470 acres he purchased. Exhibit 3 to Allstate's Motion for Summary Judgment is a survey Berrey produced to Allstate that was labeled in Berrey's deposition. (Doc. 68-2 at 2). Berrey testified that the exhibit is a map of the portion of the property where the accident occurred.

The property located at 100 Tinnie Lane is a 3.54 acre tract upon which lot the number "81" is handwritten on exhibit 3. The parties agree that Berrey bought 100 Tinnie Lane for investment out of a foreclosure in 2005, and that Berrey paid $30,000 to $32,500 for that property. The parties also agree that 100 Tinnie Lane is part of the original 470 acre purchase in 2001. There has been no explanation as to why Berrey had to purchase this land a second time. The Court assumes that Berrey sold 100 Tinnie Lane, it was later foreclosed upon, and he bought it again. Regardless, Berrey owned it at the time Sajnacki was injured.

On exhibit 3, Sajnacki's property is labeled "S" and colored in yellow. A twelve to fifteen foot gravel road, known as Tinnie Lane, runs between the Sajnacki property and 100 Tinnie Lane. Tinnie Lane is within an area labeled "Easement" on exhibit 3.[6] On exhibit 3, the lake is labeled "Lay Lake." Exhibit 4 to Allstate's Motion

---

[6] In his deposition, Berrey testified that the area labeled "Easement" runs "15 foot from the center line" of Tinnie Lane. (Doc. 68-1 at 10(33).

for Summary Judgment is a demonstrative aid with separate colors for features testified to by Berrey in his deposition and labeled in exhibit 3. (Doc. 68-2 at 4). The yellow area on exhibit 4 is the Sajnacki property, the blue outlined area is Lay Lake, and the green outlined area (including the gravel road called Tinnie Lane) is 100 Tinnie Lane.

Berrey retained the lower half of 100 Tinnie Lane, labeled "I kept this" on exhibit 3, for investment. Berrey sold the top half of 100 Tinnie Lane, and a mobile home thereon, to the Liner family under an installment sales contract. The property the Liners bought is marked on exhibit 3 with the phrase "Selling to Liners" and runs above the horizontal line drawn on the lot marked "81." At the time of Sajnacki's injury, the Liners lived on 100 Tinnie Lane in the mobile home. Berrey had not deeded the property to the Liners at the time of the accident. He will deliver a deed to them when they finish the payments.[7]

The Liners' installment sale contract for the property is exhibit 5 to Allstate's Motion for Summary Judgment. (Doc. 68-2 at 6). The contract is between the Liners and Berrey individually. Under that contract, Berrey sold the top half of 100 Tinnie Lane (and the mobile home thereon) to the Liners for $65,900–more than double what

---

[7] In his deposition, Berrey agreed that, in speaking with an Allstate representative, he might have referred to this arrangement as "rent to own." (Doc. 68-1 at 28(107)).

he paid for the entire parcel. He also charged them 12% interest. The Liners made the monthly payments to Berrey, and he deposited them in the Whispering Pines of Lay Lake, Inc. bank account. He reported the income from this transaction on the corporate tax return.[8] Whispering Pines of Lay Lake, Inc. lists the Liners' installment contract as a current asset of the corporation.

### E.    Tinnie Lane

Berrey testified that all of the roadways, right of ways, ditches and drains for the roads in the 470 acre property are owned by him and have been since he bought the property in 2001. Berrey testified that Tinnie Lane "[h]as been there for 40 or 50 years." (Doc. 68-1 at 44(172)). In his deposition, Berrey stated that the roadway was "actually property that [he] surveyed out and kept the fee simple ownership to." (Doc. 68-1 at 11(40)).

One of the issues in this case is whether Tinne Lane itself had a business purpose. Berrey testified that Tinnie Lane is needed to give people access to their homes. He stated that Tinnie Lane was used to provide access to various properties he owned, and that it was it was important to his investment to make sure that there was such an access. (Doc. 68-1 at 13(47-48); doc. 68-1 at 12(44); doc. 68-1 at 12(44)-

---

[8]  Exhibit 13 to Allstate's Motion for Summary Judgment is a check representing one of the monthly payments by the Liners, made payable to Berrey.  (Doc. 68-5 at 31).

13(45)). He agreed that the property would not be worth as much if it did not have such access. (Doc. 68-1 at 13(48)).

Berrey also stated that "there would have been a prescriptive easement anyway for access to the houses back there. So to make matters easy in the long run, we wanted to go ahead and have the roadway cut out so if the [c]ounty would take it over, it would have made an easy transition." (Doc. 68-1 at 20(73)). He testified that the "whole purpose [of Berrey continuing to own the roadway] was if the [c]ounty ever takes over the road, I can just go down there and sign one deed over to them. They will have the whole road instead of going back and getting every homeowner to sign off a piece of their front yard that's a road." (Doc. 68-1 at 12(42)). Berrey also testified that "[i]f we could get the [c]ounty to take the road over, which we've done this in a few other subdivisions, then they would maintain it and it would relieve the Homeowners Association from maintaining it." (Doc. 68-1 at 13(45)). Berrey stated that "the road was never to be sold or invested or to make money off of, it was just an access." (Doc. 68-1 at 12(44)-13(45)).

### F.   **The Drainage Pipes**

There are three drainage pipes under Tinnie Lane that move water from 100 Tinnie Lane to the other side of the road. The drains are marked in red on exhibit 4 with the notation "Drain Pipes." (Doc. 68-2 at 4). Berrey testified in this case that the

drain pipes within Whispering Pines Subdivision were in place when he purchased the property.[9]

### G.  Berrey's Residences Were Separate and Apart from the 470 Acres

Berrey's residences are in Verbena, Alabama and Rockford, Alabama. Berrey never used any part of the 470 acres as his residence. Berrey never lived temporarily on any part of the 470 acres.

### H.  The Homeowner Policies

Allstate issued two homeowner policies to Berrey that were in force on the date of loss, to-wit: policy number 945377373 insuring the residence at 6740 Co Rd 59, Verbena, AL 36091; and policy number 945040053 insuring the residence at RR 1 Box 160A, Rockford, AL 35136-9621. The homeowner policies contain identical terms, including the following business activities exclusion:

*Losses We Do Not Cover Under Coverage X [liability coverage]*:

12.  **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

**We** do cover the occasional or part-time **business** activities of an **insured person**[10] who is a student under 21 years of age.

---

[9]  It is undisputed that the drains, like Tinnie Lane itself, had been there 40 to 50 years as of the time Berrey purchased the property.

[10]  There is no dispute that Berrey is an "insured person" under all of the policies at issue in this case.

(Doc. 68-3 at 44, 46) (italics and bold in original).[11]  The homeowner policies define

"business" as:

> 6.    **"Business"**—means:
>
> a.    any full or part-time activity of any kind engaged in for economic
> gain including the use of any part of any premises for such purposes.
> The providing of home day care services to other than an **insured
> person** or relative of an **insured person** for economic gain is also a
> **business**.
>
> However, the mutual exchange of home day care services is not
> considered a business.
>
> b.    any property rented or held for rental by an **insured person**. …

(Doc. 68-3 at 28) (bold in original).

The homeowner policies also exclude liability arising out of a premises that is

not an "insured premises," providing:

> *Losses We Do Not Cover Under Coverage X*:
>
> 13.    **We** do not cover **bodily injury** or **property damage**
> arising out of any premises, other than an **insured premises**, *owned*,
> rented or controlled by an **insured person**. This exclusion does not to
> apply to **bodily injury** to **a residence employee**.

(Doc. 68-3 at 46) (bold in original, italics added).

The homeowner policies contain the following definition pertinent to "insured

---

[11]  Because the exclusions in each policy are identical, the Court cites only to policy number
945377373–the policy covering the Verbena, Alabama property.

premises":

7.    **'Residence premises'** —means the dwelling, other structures and land located at the address stated on the Policy Declarations.

8.    **"Insured premises"** – means:

(a)    the **residence premises**; and

(b)    under **Section II** [liability coverage] only:

….

(4)    vacant land, other than farmland, owned by or rented to an **insured person**;

(Doc. 68-3 at 28).

## I.    <u>The Personal Umbrella Policy ("PUP")</u>

Allstate issued a personal umbrella policy to Berrey (policy number 945042073) that was in force on the date of loss. The personal umbrella policy contains the following insuring agreement:

*Excess Liability Insurance Coverage XL*

….

*Losses We Cover Under Coverage XL*

**We** will cover an **occurrence** arising only out of:

1.    Personal activities of an **insured person**, including the permissive use of a land vehicle or watercraft owned by an **insured person**.

19

2.      A volunteer civic service which an **insured person** performs without pay, for a not-for-profit corporation and which is not a function of that person's **business**.

Payment or reimbursement for reasonable expenses actually incurred by the **insured person** in connection with the volunteer civic service is not considered pay.

3.      The duties of **your** domestic or farm employees who are not subject to Workers Compensation Laws.

(Doc. 68-5 at 15) (italics and bold in original). The umbrella policy has the following exclusions:

*Exclusions – Losses We Do Not Cover Under Coverage XL*

This policy will not apply:

1.      To any **occurrence** arising out of any act or failure to act by any person in performing functions of that person's **business**.

2.      To any **occurrence** arising out of a **business** or **business property**.

(Doc. 68-5 at 15). The umbrella policy defines in pertinent part "business" and "business property" as:

7.      **"Business"** means:

a)      any full or part-time activity of any kind:

1)      arising out of or relating to an occupation, trade or profession of an **insured person**; and

2)      engaged in by an **insured person** for economic gain,

20

including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is a **business**.

b)     the rental or holding for rental of any property by an **insured person**….

8.     **"Business property"** means any property on which a business is conducted.

(Doc. 68-5 at 13) (italics and bold in original).

## III.    ANALYSIS[12]

### A.    <u>Applicable Law</u>

Recently, the Alabama Supreme Court set out the law regarding the duty to

defend as follows:

An insurance company has two general duties under a policy of insurance: a duty to defend and a duty to indemnify. The duty to defend is broader than the duty to indemnify. . . .

" 'It is well settled "that [an] insurer's duty to defend is more extensive than its duty to [indemnify]." *United States Fid. & Guar. Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala.1985) (citations omitted). Whether an insurance company owes its insured a duty to provide a defense in

_____

[12] As explained in the introduction to this opinion, both motions for summary judgment, and the responses and replies thereto, essentially argue the same issues: whether there is a duty to defend Berrey in the underlying action, and whether the instant action should be dismissed as moot or because it is not based on the "operative pleading" in the underlying action.  For simplicity, the Court has organized this opinion by the <u>arguments made</u> instead of by motion. Where necessary, the Court has indicated from which documents each argument comes.

proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. *Id.* at 1168. If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured. *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala.1977)(*citing Goldberg v. Lumber Mut. Cas. Ins. Co.*, 297 N.Y. 148, 77 N.E.2d 131 (1948)). However, "[t]his Court ... has rejected the argument that the insurer's obligation to defend must be determined solely from the facts alleged in the complaint in the action against the insured." *Ladne*r, 347 So.2d at 103. In *Pacific Indemnity Co. v. Run–A–Ford Co.*, 276 Ala. 311, 161 So.2d 789 (1964), this Court explained:

> " ' "We are of [the] opinion that in deciding whether a complaint alleges such injury, the court is not limited to the bare allegations of the complaint in the action against [the] insured but may look to facts which may be proved by admissible evidence...."

> " '276 Ala. at 318, 161 So.2d at 795; *see Ladner*, 347 So.2d at 103 (quoting this language). "[I]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Blackburn v. Fidelity & Deposit Co. of Maryland*, 667 So.2d 661, 668 (Ala.1995)(*citing United States Fid. & Guar. Co. v. Armstrong*, 479 So.2d 1164 (Ala.1985)) (other citations omitted).' "

*Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1009–10 (Ala.2005) (*quoting Acceptance Ins. Co. v. Brown*, 832 So.2d

1, 14 (Ala.2001)).

*Mid-Continent Cas. Co. v. Advantage Med. Elecs., LLC*, No. 1140908, 2015 WL

6828722, at *3-4 (Ala. Nov. 6, 2015).

### B.   The Mere Filing of an Amended Complaint in the Underlying Action Did Not Moot this Declaratory Judgment Action

Berrey argues:

> Allstate seeks a declaration of its rights under a variety of insurance policies based on Vanscoy's Complaint. Vanscoy's Amended Complaint supercedes Vanscoy's Complaint and renders Vanscoy's Complaint a nullity. *See Grayson v. Hanson*, 843 So.2d 146 (Ala. 2002) ("an amended complaint supersedes the previously filed complaint and becomes the operative pleading, unless it subsequently is modified"). Allstate seeks no declaration with regard to Vanscoy's Amended Complaint, the operative pleading in Vanscoy's Talladega County action. Because Allstate requests a declaration of its obligations with regard to a pleading that is no longer operative, Allstate's request is moot and must be dismissed.

(Doc. 70 at 6).[13]

_____

[13] This same argument, worded slightly differently, appears in Berrey's response to Allstate's Motion for Summary Judgment when Berrey states:

> Berrey has previously moved the Court to dismiss Allstate's complaint because the operative pleading upon which Allstate based its complaint has been superseded by the filing of an Amended Complaint in the Underlying Action and because the Amended Complaint may not be the final operative pleading. (Doc. 65). Berrey adopts and incorporates the position taken in [Berrey's Motion to Dismiss] herein.

(Doc. 71 at 9).  In Berrey's Motion to Dismiss he writes, in pertinent part:

> The filing of the Amended Complaint in the Underlying Action moots Allstate's Complaint and destroys the continuity of Allstate's standing to seek the relief it seeks in the Dec Action.. . .

The fact that the Complaint in the underlying action is no longer the "operative pleading" therein changes nothing. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). Despite the filing of the Amended Complaint in the underlying action, Allstate still seeks a declaration that it owes no duty to defend or indemnify Berrey in that case. The instant action is not moot simply because an amended complaint was filed.[14]

_____

Even if Allstate's Dec Action has not become moot by the filing of the Amended Complaint in the Underlying Action, Allstate's complaint is due to be dismissed because the Complaint in the Underlying Action with regard to which Allstate seeks a declaratory judgment is no longer the operative pleading.

Because the operative pleading with regard to which Allstate seeks a declaratory judgment is no longer the operative pleading, Allstate's complaint for declaratory relief should be dismissed. Alternatively, Allstate's request for declaratory relief must be stayed until the court in the Underlying Action determines what pleading is the final operative pleading therein.

(Doc. 64 at 3-5) (citations omitted).

[14]  Further, as noted by Allstate:

[D]ismissing Allstate's Complaint based on a mere technicality of pleading would violate the federal princip[le] of judicial economy.  Allstate, if dismissed, will re-file its Complaint.  This will waste the valuable resources of all parties, including the Court.

(Doc. 72 at 21).

### C.   This Court Is Not Constrained by the Allegations in the Amended Complaint in the Underlying Case

Berrey also argues that the <u>changed</u> allegations in the Amended Complaint compel this Court to find that there is a duty to defend, and that this Court must ignore evidence which suggests otherwise.[15] However, that is not the law in Alabama. As the Eleventh Circuit has noted:

> When any uncertainty exists about whether the occurrence is covered under the policy, the court is not limited to the bare allegations of the complaint in the action against the insured but may look to facts which may be proved by admissible evidence.

*Great Am. Ins. Co. v. Baddley And Mauro, LLC*, 330 Fed. App'x 174, 177 (11th Cir. 2009) ((internal citations and quotations omitted) (holding that "[t]he district court also did not err by examining the facts underlying the complaint.").[16]

---

[15]   This argument appears in document 64, Berrey's Motion to Dismiss (doc. 64 at 1-3), document 71, Berrey's opposition to Allstate's Motion for Summary Judgment (doc. 71 at 9-11), and in document 70, Berrey's brief in support of his Motion for Summary Judgment (doc. 70 at 9-11). This section of the Court's opinion should be read to apply to all those arguments.

[16]   Berrey, acknowledges this rule (see doc. 70 at 9-10, *quoting Mid-Continent Cas. Co.*, 2015 WL 6828722, at *3-4), but argues:

> Berrey does not seek a declaration that Allstate owes a duty to defend; Allstate seeks a declaration that it does not. Allstate does not allege that Vanscoy's Complaint creates any uncertainty about coverage and the resulting duty to defend. Rather, Allstate alleges that Vanscoy's Complaint "alleges that Berrey was negligent, reckless or wanton in connection with professional and business activities," but that alleged fact is plainly and clearly disproved by the face of Vanscoy's Complaint; Vanscoy's Complaint simply makes no allegation that Berrey engaged in any professional or business activity, especially when Vanscoy's Complaint is construed broadly to implicate the duty to defend.

Judge Steele, in the Southern District of Alabama, persuasively dealt with this

---

(Doc. 70 at 10). Berrey seems to be arguing, without authority, that the Complaint itself must allege "uncertainty" before other evidence is considered. That is not the law in Alabama.

Berrey also cites a Fifth Circuit case which held that

in a declaratory action to determine an insurer's duty to defend, the court may take evidence for the purpose of deciding the insurer's duty in this regard, where the facts alleged in the tort petition are sufficient to establish tort liability on the part of the insured but are silent as to the facts or characterizations thereof relied upon for a policy exclusion.

(Doc. 71 at 10 *quoting Atl. Mut. Fire Ins. Co. of Savannah v. Cook*, 619 F.2d 553, 555 (5th Cir. 1980)) (emphasis added). That opinion is binding on this Court. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit). However, Berrey tries to make a distinction in the instant case by arguing that "[t]he issue raised by Allstate is whether it **does not** have a duty to defend Berrey. A denial of the requested relief would not be tantamount to a declaration that Allstate does have a duty to defend." (Doc. 71 at 10, n. 4) (emphasis in original). While it is unclear exactly what Berrey is trying to say here, it seems as if he is arguing that the *Cook* case stands for the proposition that evidence can be considered only when an entity seeks a declaration that there is a duty to defend. However, the proper reading of *Cook* is that such evidence may be considered when a declaration is sought as to whether there is a duty to defend. Moreover, such a reading is in line with more recent Alabama cases. *See, Mid-Continent Cas. Co. v. Advantage Med. Elecs., LLC*, No. 1140908, 2015 WL 6828722, at *3-4 (Ala. Nov. 6, 2015). Allstate seeks a declaration as to whether it has a duty to defend Berrey, and argues that it does not have such a duty.

Finally, the Court finds no merit in the following similar, unsupported, and underdeveloped argument by Berrey:

Berrey did not institute this civil action seeking a declaration that the Allstate policies provide coverage for claims in the Underlying Action, and Allstate does not allege in its complaint that the policies provide no coverage for claims in the Underlying Action: Allstate seeks a declaration only that coverage is excluded under the Business Exclusion and the Rental Exclusion (which is now apparently an abandoned claim). Therefore, the face of the Amended Complaint (unless it, too, is amended) would control the determination of Allstate's duty to defend Berrey.

(Doc. 71 at 11).

very issue in *Essex Ins. Co. v. Foley*, No. CIV.A. 10-0511-WS-M, 2011 WL 1706214

(S.D. Ala. May 5, 2011) (Steele, J.). *Essex* was a declaratory judgment action filed by

Essex Insurance Company. Its insured, Water's Edge LLC ("Water's Edge") was sued

by Edward and Susan Mary Foley ("the Foleys"). As explained by Judge Steele,

> As initially presented, the Foleys' complaint alleged that in spring 2009
> Water's Edge "began remodeling a parking lot for Tacky Jack's
> restaurant" in Fort Morgan, Alabama. In the course of that endeavor, the
> Foleys alleged, Water's Edge "negligently and/or wantonly built a
> makeshift plywood ramp specifically for use by the employees of Tacky
> Jack's restaurant along the side of the parking lot." The Foleys'
> complaint further asserted that on May 22, 2009, Mr. Foley (a Tacky
> Jack's employee) slipped and fell on the ramp, shattering his femur and
> sustaining permanent injuries.
>
> On February 1, 2011, just two weeks before Essex moved for
> summary judgment in this case, the Foleys amended their complaint in
> the Underlying Action for the stated purpose of "alleg[ing] specific acts
> of negligence and/or wantonness against defendant Joe Raley Builders,
> Inc." not to alter materially their claims or theories of relief against
> Water's Edge. But the Amended Complaint also modified the Foleys'
> allegations concerning Water's Edge, as follows: (i) deleted the
> allegation that Water's Edge itself was remodeling the parking lot; (ii)
> clarified that Water's Edge hired Joe Raley Builders to remodel the
> parking lot; and (iii) asserted that "Water's Edge negligently and/or
> wantonly built a makeshift plywood ramp specifically for use by
> pedestrians along the side of the parking lot," in lieu of the previous
> assertion that Water's Edge had built the ramp specifically for the use of
> Tacky Jack's employees.

*Essex*, 2011 WL 1706214, at *1 (footnotes and citations omitted). Despite the

allegations in the Amended Complaint, Judge Steele wrote:

Recall that the Foleys' claims in the Underlying Action rest on allegations that Water's Edge negligently built a makeshift plywood ramp along the side of the parking lot, and that Mr. Foley (a Tacky Jack's employee) slipped and fell on the ramp. There appears to be no bona fide dispute, and the Court accepts for summary judgment purposes, that the ramp was built for the sole benefit and use of Tacky Jack's Restaurant and its employees, not for use in boat moorage activities.

*Id.* at \*6. In a footnote, Judge Steele then wrote:

The Court considers this fact on summary judgment even though the Foleys' February 2011 amended complaint in the Underlying Action strips away most of the detail concerning the purposes and use of the ramp. The original complaint alleged that Water's Edge built the ramp "specifically for use by the employees of Tacky Jack's restaurant," but their amended complaint states that Water's Edge built the ramp "specifically for use by pedestrians." Water's Edge contends that the amended complaint is binding for duty to defend purposes, and that the ramp must therefore be viewed as a generic pedestrian ramp, rather than one specifically for use by the restaurant. Essex, for its part, accuses the Foleys' counsel of violating Rule 11 by filing a sham amended complaint. The Court need not and will not wade far into this tangential morass. Applicable law is clear that an insurer's duty to defend is gauged not only by the "bare allegations of the complaint," but also by "facts which may be proved by admissible evidence." [*Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1010 (Ala. 2005)]; *see also* [*Pennsylvania Nat. Mut. Cas. Ins. Co. v. Roberts Bros.*, 550 F. Supp. 2d 1295, 1304 (S.D. Ala. 2008)] (in evaluating duty to defend, "a court is not constrained to the allegations of the underlying complaint, but may additionally look to facts which may be proved by admissible evidence"). Even if the Foleys could in good faith disavow their now-deleted factual allegations concerning the ramp for coverage purposes, the uncontroverted record evidence is that the ramp was indeed provided for the exclusive use and benefit of Tacky Jack's restaurant. This is true, even though Essex's reply brief omits the cited portions of Mr. Foley's deposition transcript on which it relies for this

> proposition. In short, after cutting through the red-herring arguments and rhetoric, the Court finds no genuine material dispute of fact that the ramp in question was built and used for the benefit of Tacky Jack's restaurant operations.

*Id.* at *6, n. 12.

The Court agrees with Judge Steele that this is the proper approach, and will consider <u>both</u> the allegations in the underlying action's Amended Complaint, <u>and</u> the evidence presented, to determine whether Allstate has a duty to defend Berrey.

## D.   <u>The Homeowner Policies</u>

Allstate states that there "are two grounds of non-coverage[17] under the homeowner policies: (i) the property was not listed on the policies and was not an 'insured premises,' and (ii) the claim is excluded as arising from Berrey's business activities." (Doc. 67 at 4). The Court will examine each argument in turn.

---

[17] Berrey argues that consideration of the "coverage" issue is premature. (Doc. 71 at 6-7). The Court agrees that the issue of the duty to <u>indemnify</u> is premature. (*See* doc. 56 at 5). However, whether there is "coverage" under the policy is relevant to the issue of the duty to defend. *See, Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993) ("An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured. . . . If the allegations accuse the insured of actions for which the insurance company has provided protection, the insurance company is obligated to defend the insured.") (citations omitted).

### 1.    *The Insured Premises Requirement*[18]

The Homeowner Policies only cover injuries which occur on the "insured premises," which would include only: 1) the dwelling, other structures and land located at the address stated on the Policy Declarations, or 2) vacant land, other than farmland, owned by or rented to an insured person. (Doc. 68-3 at 28). It is undisputed that the area where Sajnacki was injured is not one of the addresses specifically listed in either policy's declarations.

The question then becomes whether the area on which the injury occurred was "vacant land." There is a genuine dispute as to this issue. Allstate argues that 100 Tinnie Lane was not vacant because the Liners lived on it. However, the evidence reflects that the Liners lived on only the top portion of Tinnie Lane. There is no

---

[18]   Berrey suggests that this argument should be ignored by the Court since, in the Complaint for declaratory judgment,

> Allstate seeks a declaration that the [policies] provide no coverage for two reasons, and two reasons only: 1) the damages sought in the Underlying Action are excluded because they arise from Berrey's professional and business activities ('the Business Activities Exclusion") (Doc. 1, para. 18, para. 38) and 2) the damages sought in the Underlying Action arise from "property owned by Berrey and rented to unrelated third parties" ("the Rental Exclusion") (Doc. 1, para. 10, para. 38).

(Doc. 71 at 8).  However, "coverage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written." *Home Indem. Co. v. Reed Equip. Co.*, 381 So. 2d 45, 51 (Ala. 1980).  The "insured premises"  requirement was clearly set out in the Complaint, and argued in Allstate's Motion for Summary Judgment.  The Court will not ignore a requirement for coverage.  Regardless, in light of this Court's holding on the issue, the point is moot.

evidence that anyone lived on the bottom portion, which Berrey kept for investment. Further, the injury occurred at the site of the <u>drain</u>. Berrey testified that the drain was on the easement, and that he owned the easement. (Doc. 68-1 at 11(39)). There is no evidence as to whether anyone lived on the easement. No party is entitled to summary judgment on the issue of whether the place of the injury was an insured premises.

### 2.   *The "Business Activities" Exclusion*

Allstate argues that the "business activities" exclusion in the Homeowner Policies excludes coverage for the injury in this case. As noted above, the two homeowner policies in this case each exclude coverage for "**bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**." (Doc. 68-3 at 46) (emphasis in original). The policies define "business" as "any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes," or "any property rented or held for rental by an **insured person**." (Doc. 68-3 at 28) (emphasis in original).

"In general, the insurer bears the burden of proving the applicability of any policy exclusion." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001) (*citing Fleming v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 293 Ala. 719, 310 So.2d 200, 202 (1975)). The Alabama Supreme Court has stated that

exceptions to coverage must be interpreted as narrowly as possible in

order to provide maximum coverage to the insured. However, courts are not at liberty to rewrite policies to provide coverage not intended by the parties. In the absence of statutory provisions to the contrary, insurance companies have the right to limit their liability and write policies with narrow coverage. If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties.

*Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 803 (Ala. 2012) (internal quotations and citations omitted). In the instant case, no party argues that there is any ambiguity in the above exclusion, and the Court holds that there is none. Therefore, the Court must enforce the exclusion as written, and exclude coverage if it finds that Allstate has shown that there is no genuine issue of material fact that Berrey's ownership of the land where the Sajnacki's injury occurred was a "business activity" out of which Sajnacki's injury arose.

### a.      Berrey's Ownership of the Land Is a Business Activity

Berrey's business, buying real estate, developing it, and then selling it at a profit, is an "activity . . . engaged in for economic gain." It is undisputed that that was his purpose in buying the entire 470 acres (including the areas upon which the injury occurred), and his forming Whispering Pines of Lay Lake, Inc. *See*, *Vallas v. Cincinnati Ins. Co.*, 624 So. 2d 568, 571-72 (Ala. 1993) (limited partnership which was formed to buy and sell investment real property for capital gain could be

32

"business" and "an undertaking ... for gain [or] profit").

Further, there is undisputed evidence that 100 Tinnie Lane was being held for economic gain. Part of Berrey's business included selling his investment properties to third parties pursuant to installment sales contracts. The top portion of 100 Tinnie Lane was being sold in that manner to the Liners, the income from which was deposited into the corporate bank account of Whispering Pines of Lay Lake, Inc.– a corporation organized for the express purpose of "the business of developing real estate." (Doc. 68-1 at 49). Whispering Pines of Lay Lake, Inc. lists the Liners' installment contract as a current asset of the corporation. Further, it is undisputed that Berrey kept the bottom portion of 100 Tinnie Lane for "investment."

The parties dispute whether Tinnie Lane itself was held for a business purpose. It is undisputed that Berrey also owned all of the roadways, right of ways, ditches and drains for the roads in the 470 acre property, including the Tinnie Lane roadway and the drain where the injury occurred. Berrey notes that he testified that "the road was never to be sold or invested or to make money off of." (Doc. 68-1 at 12(44)-13(45); doc. 71 at 15). However, this evidence does not establish that the road did not have a business purpose, just that the road itself would never be sold at a profit. Berrey also points out that he testified that he hoped the county would take over the road, but fails to explain why this eliminates any possibility that the road had a business

33

purpose.  (Doc. 71 at 15).

At the end of the day, it is undisputed that Berrey testified that the road was important to his investment to make sure that there was access to all of the properties in the land he owned. (Doc. 68-1 at 13(47-48); doc. 68-1 at 12(44); doc. 68-1 at 12(44)-13(45)). Berrey agreed in his deposition that the property would not be worth as much if it did not have such access. (Doc. 68-1 at 13(48)).[19] There is no genuine issue of material fact that the road was being held "for economic gain."

### b.    Sajnacki's Injury Arose out of the Business of Owning the Land

The Alabama Supreme Court has stated that, in liability policies, the phrase "arising out of . . . has generally been held to be a broad, comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or 'flowing from.' " *Taliaferro v. Progressive Specialty Ins. Co.*, 821 So. 2d 976, 980 (Ala. 2001) (*quoting Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 365 (Tenn. 1973)); *see also, Blue Bird Body Co. v. Ryder Truck Rental, Inc.*, 583 F.2d 717, 726 (5th Cir. 1978) ("We start from the premise that arising out of, . . . are words of much broader significance than 'caused by.' They are ordinarily understood to mean

---

[19]  The court's "duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005).

34

'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or, in short, 'incident to, or having connection with.'") (internal quotations and citations omitted).[20] In this case, the injury to Sajnacki, which occurred on the property owned by Berrey, originates from, grows out of, and/or flows from the condition of the land owned by Berrey, for economic gain.[21]

Because the injury arose out of Berrey's business activities, the Court holds that the business activities exclusion of the homeowner policies excludes coverage for Sajnacki's accident. Summary judgment is therefore appropriate for Allstate, and against Berrey, on this issue.

## E.    The Personal Umbrella Policy

Allstate argues that the umbrella policy: 1) only provides coverage for "personal activities," not "business activities," and so there is no coverage under the

---

[20] Allstate noted this definition in its brief in support of its Motion for Summary Judgment, to which Berrey responded:

> Allstate argues in its summary judgment brief that the term "arising out of" "means 'origination from,' 'having its origin in,' 'growing out,' or 'flowing from.' (Doc. 67, p. 19). In a Julie Andrews/"Do-Re-Mi" sense, "arising out of" means "Let's start at the very beginning, A very good place to start."

(Doc. 71 at 15-16).  Despite its fondness for musicals, the Court does not know what to make of this bizarre response.

[21] Berrey argues that his liability, if any, does not arise out of any business activity, but instead arises out of the mere <u>ownership</u> of the land.  (Doc. 71 at 15-17).  Berrey misses the point here.  The ownership, for investment purposes, <u>is</u> the business  activity.

policy; and 2) the claim is excluded under the business activities exclusion to the umbrella policy. The Court will address each argument in turn.

### 1.    *There Is No Coverage under the Policy*

Allstate argues that there is no coverage under the umbrella policy because it provides coverage only for the "[p]ersonal activities" of an insured person (doc. 68-5 at 15), and, for all the reasons set out in the discussion of the homeowner policies, Sajnacki was injured as a result of the business activities of Berrey. *See*, *Grossman v. Am. Family Mut. Ins. Co.*, 461 N.W.2d 489, 496 (Minn. Ct. App. 1990) ("It should be noted that one of the personal policies, the Allstate policy, was an umbrella policy. . . .[T]he coverage under the Allstate policy is limited to personal activities of the insured. Because the claims did not arise out of the personal activities of the insured, there is no coverage under the Allstate policy."). In Alabama, "[i]f the question involves coverage . . . the burden is on the insured to prove coverage[.]" *Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x 807, 813-14 (11th Cir. 2013). Berrey fails to respond to this argument, and otherwise makes no attempt to establish coverage under the umbrella policy. Further, the Court holds that the undisputed evidence shows that the injury did not arise out of Berrey's personal activities. For these reasons, summary judgment is due to be granted to Allstate, and against Berrey, on the issue of whether, under the umbrella policy, there is coverage, and therefore

a duty to defend Berrey.

## 2. *The "Business Activities" Exclusion Applies*

Further, the umbrella policy excludes coverage "[t]o any occurrence arising out of any act or failure to act by any person in performing functions of that person's business," and "[t]o any occurrence arising out of a business or business property." (Doc. 68-5 at 15). Similar to the homeowner policies, the umbrella policy defines "business," in part, as "any full or part-time activity of any kind . . . engaged in by an insured person <u>for economic gain</u>, including the use of any part of any premises for such purposes." (Doc. 68-5 at 13) (emphasis added). For the same reasons discussed in this Court's analysis of the homeowner policies, this similar exclusion applies to exclude coverage under the umbrella policy. Summary judgment is therefore appropriate for Allstate, and against Berrey, on the issue of whether coverage is excluded under the umbrella policy.

## IV.   CONCLUSION

For the reasons stated herein, Allstate's Motion for Summary Judgment is due to be **GRANTED**. Berrey's Motion for Summary Judgment and Motion to Dismiss are due to be **DENIED**. It is hereby **ORDERED, ADJUDGED**, and **DECREED** as follows:

1.   Regarding that action styled *Louis Vanscoy, as Personal Representative of the*

*Estate of Robert John Sajnacki v. Frederick B. Berrey, Jr.; Whispering Pines of Lay Lake, Inc.; Whispering Pines of Lay Lake Homeowner's Assoc., et al.* CV-2014-900309, which is filed in the Circuit Court of Talladega County, Alabama, the Court hereby **DECLARES** that AllState owes no duty to defend Berrey under: Allstate policy number 945377373 insuring the residence at 6740 Co Rd 59, Verbena, AL 36091; and/or Allstate policy number 945040053 insuring the residence at RR 1 Box 160A, Rockford, AL 35136-9621.

2.  Regarding that action styled *Louis Vanscoy, as Personal Representative of the Estate of Robert John Sajnacki v. Frederick B. Berrey, Jr.; Whispering Pines of Lay Lake, Inc.; Whispering Pines of Lay Lake Homeowner's Assoc., et al.* CV-2014-900309, which is filed in the Circuit Court of Talladega County, Alabama, the Court hereby **DECLARES** that AllState owes no duty to defend Berrey under Allstate policy number 945042073, the personal umbrella policy.

3.  The issue of whether Allstate has a duty to indemnify Berrey remains stayed.

4.  The parties **SHALL** advise the Court when the underlying action is resolved.

5.  The Clerk of Court is hereby **ORDERED** to administratively close this case.

**DONE** and **ORDERED** this 19th day of July, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge